MARK S. DAVIS 1442
DAVIS LEVIN LIVINGSTON GRANDE
400 Davis Levin Livingston Grande Place
851 Fort Street
Honolulu, HI 96813
Telephone : (808) 524-7500
Facsimile : (808) 545-7802
E-mail : mdavis@davislevin.com

TERRY O'REILLY [Pro Hac Vice]
STEPHEN J. PURTILL [Pro Hac Vice]
O'REILLY & DANKO
1900 O'Farrell Street, Suite 360
San Mateo, CA 94403
Telephone : (650) 358-5901
Facsimile : (650) 358-2575
E-mail : spurtill@oreillylaw.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TINA HOLLIDAY, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>EXTEX, et al.,<br><br>Defendants. | Case No.: CV 05-00194 SPK LEK<br>(Airplane Product Liability)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: September 5, 2006**<br>**Time: 9:00 a.m.**<br>**Judge: Hon. David A. Ezra** |
| TIMOTHY HOLLIDAY, et al.,<br><br>Plaintiffs,<br><br>vs. | Case No.: CV 05-00299 SPK LEK |

| | |
|---|---|
| EXTEX, et al.,<br><br>Defendants. | |
| MARLETTE E. THOMAS, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>K & S HELICOPTERS, INC., et al.<br><br>Defendants. | Case No. CV 05-00319 DAE-LEK |

TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................................ 1

STATEMENT OF FACTS ........................................................................ 2

ARGUMENT……………………………………………………………………4

A. The Court Has Already Ruled Against SAP on its Statute of Limitations ... Argument- the Present Motion Adds Nothing to SAP's Failed Argument. ........................................................................ 4

B. SAP Cannot Escape Liability For Its Defective Design Simply Because It Sold The Design To Someone Else .................................. 8

C. Breach of Warranty and Misrepresentation. .................................... 16

CONCLUSION ........................................................................ 17

TABLE OF AUTHORITIES

## Cases

*Acoba v. General Tire, Inc.*,
986 P.2d 288 (Haw. 1999) ........ 9

*Alm v. Aluminum Co. of America*,
717 S.W.2d 588 (Tex. 1986) ........ 12

Alm v. Aluminum Co. of America,
785 S.W.2d 137, cert. denied 498 U.S. 847 (1990) ........ 13

*Exxon Shipping Co. v. Pacific Resources, Inc.*,
789 F.Supp. 1521 (D.Haw. 1991) ........ 11

*Hays v. City and County of Honolulu*,
917 P2d ........ 5, 6

*Healy v. McGhan*,
2001 WL 717110 (Mass. Super., 2001) ........ 9

*In re Minnesota Breast Implant Litigation*,
36 F.Supp.2d 863 (D.Minn. 1998) ........ 9, 10

*Jack Frost, Inc. v. Engineered Bldg. Components Co.*,
304 N.W.2d 346 (Minn. 1981) ........ 10, 11

*Kasel v. Remington Arms Co.*,
24 Cal.App.3d 711 (2d Dist. 1972) ........ 14

*Pan-Alaska Fisheries v. Marine Construction and Design*,
565 F.2d 1129, 1135 (1977) ........ 12

*Russell v. Attco, Inc.*,
82 Haw. 461 (1996): ........ 5

*Sage v. Fairchild-Swearingen Corp.*
517 N.E.2d 1304 (N.Y. 1987) ........ 13

*Yoshizaki v. Hilo Hospital*,
50 Haw. 150, 433 P2d. 220 (1967)........................................................... 6

**Statutes**

14 C.F.R. section 21.303(k)........................................................... 8, 17

Hawaii Rule of Civil Procedure Rule 17 ........................................................ 5, 18

HRCP Rule 17(d) …………………………………………………………... 5

Plaintiffs TIMOTHY HOLLIDAY and DARLENE HOLLIDAY, Case No. CV 05-00299 SPK LEK and TINA HOLLIDAY, CHEYANNE HOLLIDAY and AUSTIN HOLLIDAY, Case No. CV 05-00194 SPK LEK oppose the Motion for Summary Judgment of defendant SUPERIOR AIR PARTS (SAP) on the following grounds:

**SUMMARY OF ARGUMENT**

The central issue in this motion can be stated as follows: Should a designer of a defective product be absolved of all liability for severe injuries (including death) resulting from use of that design simply because it sold the design to another corporation? Plaintiffs submit that the answer is an unqualified no.

SAP designed a product (a CAC) expressly for use as a substitute part for a Rolls-Royce CAC in a helicopter engine. SAP's design was defective because it led to fretting of the product, which in turn led to complete engine failure of the helicopter while in flight. This resulted, in the instant case, in the death of plaintiffs' decedent and several other passengers in the helicopter supplied with a SAP designed CAC. SAP argues that it should nevertheless be excused from any liability on the sole ground that it sold the design to Extex, another defendant in this action. Neither the law nor common sense supports SAP's position, as will be demonstrated below.

SAP also brings its motion on the purported ground of statute of limitations. SAP has already made the identical argument and the Court has already rejected it. SAP now seeks to resurrect the argument, but adds no new facts or law to its case. Instead, like the Eveready Rabbit SAP just keeps charging forward, oblivious of the fact that the Court has already rejected its argument. It is unfortunate that SAP has forced plaintiffs and the Court to deal with this issue seriatim, but now that it is before the Court once again, the Court should affirm its earlier ruling and deny the motion on statute of limitations grounds.

This is a motion for Summary Judgment, not a motion for Partial Summary Judgment. Thus, unless SAP can prove that as a matter of law plaintiffs are unable to recover under any theory the Court must deny the motion in its entirety. Because, as demonstrated below, the evidence before the Court establishes the presence of numerous triable issues of material fact, the Court should therefore deny the motion in its entirety.

## STATEMENT OF FACTS

This lawsuit arises out of a fatal helicopter crash on June 15, 2003[1]. The cause of the crash was the failure of a Compressor Adapter Coupling (CAC) in the

[1] The facts set forth in this section were documented and verified in plaintiffs' Opposition to Allison Defendants' Motion for Summary Judgment, except as specifically noted. For the sake of avoiding needless repetition, Plaintiffs incorporate that Opposition and its Concise Statement by reference.

helicopter's engine. The CAC's failure led to complete loss of power to the helicopter and resulted in a fatal crash in which plaintiffs' decedent and several others died.

The CAC is part of a series of parts that deliver power from the engine to the rotors and other parts of the helicopter that keep it aloft. The engine was a Rolls-Royce 250-C20 engine. SAP is an aircraft parts designer engaged in copying engine parts through reverse engineering. SAP reverse engineered the original 250-C20 CAC and sold it as a replacement part. It did this without the benefit of Rolls-Royce plans - instead, it used public documents and an actual Rolls-Royce CAC to make its own design to conform as closely as possible to the Rolls-Royce product.[2].

In 1993 Rolls-Royce redesigned the CAC, and SAP reverse engineered the redesigned CAC in the same way- it made its own design to conform as closely as possible to the Rolls-Royce redesigned CAC[3].

As it turned out, the CAC suffered from a design defect because it tended to "fret". This fretting led to several failures of the CAC. Failure of the CAC meant that power from the engine could no longer be transferred to the parts of the helicopter that kept it aloft- in other words, a total loss of power. The fatal

[2] Plaintiffs' Concise Statement, Paragraph A
[3] Plaintiffs' Concise Statement, Paragraph B

helicopter at issue in this litigation suffered from just such a CAC failure and experienced a total power failure that caused the crash.

In 1996 SAP sold its CAC design to defendant Extex[4]. Extex obtained its own FAA approval to make the CAC, but did not change the SAP design in doing so- rather, it simply provided the FAA data that SAP had already supplied[5].

## ARGUMENT

### A. The Court Has Already Ruled Against SAP on its Statute of Limitations Argument- the Present Motion Adds Nothing to SAP's Failed Argument.

SAP's repetition of its failed statute of limitations argument in this motion is puzzling at best. The Court has already ruled, over SAP's vigorous opposition on the exact same grounds that it asserts here, that the Complaints are not barred by the statute of limitations. Thus, plaintiffs moved the Court for leave to file a First Amended Complaint naming SAP as an additional defendant. SAP opposed the motion, arguing exactly as it does here, that the Complaints against it were barred by the statute of limitations. The Court rejected SAP's argument and allowed the amended complaints[6]. As noted in plaintiffs' papers in the earlier motion,

[4] SAP's Concise Statement, Paragraph 4
[5] Plaintiffs' Concise Statement, Paragraph C
[6] See Court's Order granting plaintiffs leave to file First and Second Amended Complaints, May 18, 2006

plaintiffs filed their actions within the two-year statute of limitations[7]. At the time of the crash there was no evidence of SAP's involvement- the CAC was manufactured by Extex and the NTSB report on the accident made no mention of SAP. The Complaints, filed in Hawaii State Court, included DOE allegations, as permitted under Hawaii law. The Hawaii Supreme Court stated the purpose of DOE amendments quite explicitly in *Russell v. Attco, Inc.*, 82 Haw. 461 (1996): "Therefore, in cases such as the present case, where the only deficiency in the plaintiff's knowledge regarding a cause of action is the identity of other potentially responsible parties, HRCP Rule 17(d) [DOE amendment] provides a method by which the statute of limitations may be tolled relative to a claim against the as-yet unidentified defendants."[8]

SAP cites a single case in support of its statute of limitations argument, *Hays v. City and County of Honolulu*, 917 P2d. 718, 81 Haw. 391 (1996). This Court has already rejected SAP's reliance on *Hays* for the excellent reason that it is totally inapposite. *Hays* involved a tragic accident in which a young man suffered quadriplegia from a swimming accident. He did not think that he had a cause of action against the municipality where he was injured, but seven years after the injury he heard of a successful lawsuit against a municipality in a similar situation

---

[7] The Complaints were filed in February 2005 and March 2005, less than 2 years after the crash in June 2005

[8] 82 Haw. at 466

and filed suit. The suit was filed more than five years after the statute of limitations had expired and the Hawaii Supreme Court held that it was time barred. The plaintiff knew from the outset of the municipality's involvement, but chose not to sue due to his belief that he had no cause of action. The *Hays* court, discussing the "discovery" rule, held that the statute of limitations is not stayed where the plaintiff knew of the defendant's relationship to his injury, but did not appreciate its legal significance until after the statute expired[9]. In so doing, the Hawaii Supreme Court reaffirmed the basic "discovery" rule in Hawaii: "We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence"[10].

Thus, under SAP's own authority, *Hays*, the statute of limitations against SAP was tolled until plaintiffs "knew or should have known of [SAP's] negligence". In this motion for summary judgment, therefore, SAP must as a matter of law that it is entitled to judgment, and thus must show as a matter of law that plaintiffs knew or should have known of SAP's negligence more than two years before they amended the complaints to add SAP. SAP does not even attempt to sustain this burden. Instead, it simply says that "Plaintiffs were already aware of the existence of a lawsuit pursuing passenger claims arising from the accident and

---

[9] 917 P2d. at 726

[10] 917 P2d. at 720, quoting *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 154, 433 P2d. 220, 223 (1967)

naming Superior [SAP] as a defendant."[11] The Court is requested to take judicial notice that the passengers' lawsuit was filed in May 2005, obviously less than two years before plaintiffs named SAP as a defendant since May 2007 is still in the future.

In addition to the fact that SAP offers no evidence to support its statute of limitations argument, plaintiffs have already successfully opposed the argument with a sworn declaration showing that plaintiffs did not become aware of Superior's involvement until after May 2005, and that, pursuant to the requirements of FRCP Rule 11 they did not seek to add SAP as a defendant until they were satisfied that a valid claim for relief was available against SAP. See Declaration of Stephen Purtill filed in support of motion to file first amended complaint[12]. For the convenience of the Court, a copy of that declaration is filed herewith.

Thus, SAP fails completely to sustain its burden regarding statute of limitations and the Court must deny the motion.

---

[11] SAP's MPA at p. 5

[12] The Court is requested to take judicial notice of its files in this matter. For the Court's convenience, a copy of the Declaration is attached to the Declaration of Terry O'Reilly as Exhibit C.

## B. SAP Cannot Escape Liability For Its Defective Design Simply Because It Sold The Design To Someone Else

SAP's principal argument is that it may evade liability for its defective design as a matter of law simply by selling the design to another entity. Both common sense and the law hold that SAP is mistaken.

The CAC that failed is a PMA part (Parts Manufacturer Approval). A PMA is a certificate granted to a designer/manufacturer that copies parts of Original Equipment Manufacturers (OEMs). In this case SAP reverse engineered Rolls-Royce's CAC for the 250-C20 engine and received a PMA for its design. PMA's are regulated by the FAA, which requires that each PMA holder is responsible for the safety of its design[13].

SAP admits that it designed the CAC whose failure cost the lives of plaintiffs' decedent and the other passengers in the fatal helicopter[14]. It argues, however, that it bears no responsibility for that defective design because it sold the design to Extex. In support of its argument SAP cites reported decisions that, upon examination, offer it no support. By contrast, plaintiffs' authority, cited below, establishes that the designer of a defective product <u>does</u> bear responsibility for the consequences of the defective design.

---

[13] 14 C.F.R. section 21.303(k)
[14] SAP's Concise Statement, Paragraph 4

SAP cites *Acoba v. General Tire, Inc.*, 986 P.2d 288 (Haw. 1999) for the proposition that it owed plaintiffs and their decedent no duty because it did not manufacture the fatal CAC. However, *Acoba* is clearly inapposite. *Acoba* involved a tire installer who was killed when a tire exploded. The plaintiff sought to impose liability on the tire manufacturer for failure to warn of dangers in the wheel's rim assembly. The tire manufacturer had no involvement in the design, manufacture or installation of the rim assembly, which was designed and produced by Firestone. The Acoba court held that a manufacturer of one product- the tire- could not be held liable for defects in a product with which it had no involvement at all[15]. By contrast, in the present case SAP admits its involvement in the failed product- SAP designed it. Thus, *Acoba* is inapposite and offers no support for SAP's position.

SAP then cites two cases involving breast implants designed by 3M, a trial court decision from Massachusetts[16], and a federal court decision[17]. Both these decisions arise out of the same set of claims- alleged injuries stemming from breast implants. A decision from a Massachusetts trial court, of course, offers little guidance to the Court in this action. The federal decision offers greater

[15] 986 P.2d at 305
[16] *Healy v. McGhan*, 2001 WL 717110 (Mass. Super., 2001)
[17] *In re Minnesota Breast Implant Litigation*, 36 F.Supp.2d 863 (D.Minn. 1998)

precedential value, but a careful examination of the decision reveals that it offers SAP no support in this motion.

In *Minnesota Breast Implant Litigation* numerous plaintiffs sued over complications ensuing from breast implants that they had received. 3M had designed the implants and manufactured them for a while, but sold the product line to McGhan in 1984. The plaintiffs sought to hold 3M liable for damages they claimed to have suffered from implants made by McGhan. The court rejected plaintiffs' position, holding that McGhan chose which design to use. However, the court went on to discuss an exception to the rule, an exception that is fatal to SAP's position. The plaintiffs argued that under *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346 (Minn. 1981) 3M should bear responsibility for the negligent design of the implants. *Jack Frost* held that a roof truss designer could be held liable for the failure of the roof. The *Minnesota Breast Implants* court acknowledged the validity of the *Jack Frost* holding, but distinguished it as follows:

> "3M's actions in the present case differ substantially from the designer's in Jack Frost. The trusses in Jack Frost were designed specifically for the plaintiffs' type of chicken barns. Additionally, the trusses were designed by a company which was in the business of providing construction designs. There is no evidence to suggest that 3M was in the business of providing designs for breast implants. Admittedly, 3M designed implants for its own use. But 3M *never sold breast implant designs to other companies*"[18]

[18] 36 F.Supp. 2d at 873, emphasis supplied

SAP fits squarely within the *Jack Frost* exception delineated above. SAP designed the CAC specifically for use in a Rolls-Royce 250-C20 engine, reverse engineering the Rolls-Royce CAC. *SAP sold its design* to Extex and admits the fact in Paragraph 4 of its Concise Statement. Thus, even under SAP's authority it should be liable for its defective design of the CAC.

SAP cites *Exxon Shipping Co. v. Pacific Resources, Inc.*, 789 F.Supp. 1521 (D.Haw. 1991). A simple examination of that case reveals once again that it is of no probative value to the present case. In *Exxon* the plaintiff suffered damages because a chain broke, causing a ship to drift from its mooring. The problem was that there were two chains, and no one could determine which chain failed. Sofec had supplied one chain and Hiri the other. There was thus no evidence that Sofec's chain was responsible for the damage, and the court followed the well-established rule that where the plaintiff is unable to identify the party at fault the court will not impose liability on a party who might have had no fault. The *Exxon* court further stated that "any integral part of the 'overall producing and marketing enterprise . . . should bear the cost of injuries resulting from defective products.'"[19] The court held that Sofec was not a part of that enterprise because Hiri had originally contracted with Sofec to supply two chains, but then reduced the order to one, purchasing the second chain itself at a later date. Thus, "Sofec did not benefit

financially or otherwise from Hiri's direct purchase of the replacement chain from Bridon. HIRI, by eliminating the supply of replacement parts from Sofec's contract, deprived Sofec of revenues that it otherwise would have earned under the terms of the original contract with HIRI. To require Sofec to absorb the social cost of a component part that it did not supply would undermine that economic result endorsed by the Ninth Circuit in Pan-Alaska."[20] Unlike Sofec, SAP not only did not lose financial benefit from the use of its CAC design- it directly benefited by selling its design to Extex, and directly participated in the "overall marketing and producing enterprise" that led to the incorporation of SAP's CAC design into the fatal helicopter.

SAP cites no other cases in support of its thesis that selling the design terminates its liability[21]. Plaintiffs offer authority squarely on point to refute SAP's position.

In *Alm v. Aluminum Co. of America*, 717 S.W.2d 588 (Tex. 1986)[22] the plaintiff suffered an eye injury when a bottle cap exploded off a soft drink bottle.

---

[19] 789 F.Supp. at 1527, citing *Pan-Alaska Fisheries v. Marine Construction and Design*, 565 F.2d 1129, 1135 (1977)

[20] *Ibid*.

[21] SAP does cite its contract with Extex, in which Extex assumes liability for claims against SAP based on the CAC. Such a contractual provision is obviously not binding on plaintiffs, who were not parties to that contract. Rather, it simply highlights the fact that SAP faces continuing liability for its design and sought to protect itself with an indemnity provision in its contract with Extex.

Alcoa had designed the closure system, but did not manufacture any of the parts- the bottle, cap and contents- involved in the plaintiff's injury. Alcoa thus sought to evade liability on the ground that it did not manufacture the offending product. The Texas Supreme Court rejected this position as follows:

> "A manufacturer has long been held to have a duty to exercise ordinary care in the design of a product. *A designer who is not also the manufacturer should share the same duty to develop a safe design*"[23].

In *Sage v. Fairchild-Swearingen Corp.* 517 N.E.2d 1304 (N.Y. 1987) an airline employee suffered amputation of a finger when she caught it on a ladder hanger while unloading baggage. She sued the designer of the ladder, who argued, as SAP does in the present case, that it was not liable because it did not manufacture the actual injury ladder. Rather, the ladder that cost the plaintiff her finger was a replacement built to copy the manufacturer's design. The jury awarded damages, but the appellate division reversed, finding that the fact that the manufacturer had not manufactured the particular ladder in question precluded liability. The New York Court of Appeals reversed the appellate division, holding as follows:

> "Based upon the evidence before it, the jury could find that the hanger originally designed by defendant was defective because its utility as a

[22] The Texas Supreme Court modified its opinion in this case at 785 S.W.2d 137, cert. denied 498 U.S. 847 (1990). The modification affirmed the part of the earlier opinion discussed herein, and imposed further liability on Alcoa on other grounds not relevant here.

[23] 77 S.W.2d at 590-591, citation omitted, emphasis supplied

> ladder hanger was overridden by the dangers created by its use and that the manufacturer could have designed and located the hanger in a manner which preserved its utility while eliminating the dangers from its use. Thus, the traditional test of a defectively designed product was met. That the hanger actually involved in the accident was a replacement and not the original is not dispositive because in fabricating and installing a new part Commuter's employees, as the jury found, did no more than perpetuate defendant's bad design as defendant's representatives foresaw they might…Inasmuch as the defect was in the design, the manufacturer was the logical party in a position to discover the defect and correct it to avoid injury to the public. Placing the economic burden on the manufacturer under these circumstances does no more than induce it to design quality equipment at the outset and '[discourages] misdesign rather than [encourages] it'. Conversely, to insulate a manufacturer under such circumstances would allow it to escape liability for designing flimsy parts"[24]

In *Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711 (2d Dist. 1972) a hunter was injured when his gun exploded in his hand. He sued Remington, which designed the shells that allegedly caused his injury. Remington defended on the ground that it did not manufacture the shell at issue- that was manufactured by a Mexican corporation that had obtained a license from Remington to manufacture shells according to Remington's design. The trial court instructed the jury that it could only find Remington liable if it actually manufactured the shell that injured plaintiff, resulting in a defense verdict. The court of appeals reversed, holding that Remington bore responsibility because it constituted a link in the chain that put the defective product in the stream of commerce: "It is the defendant's participatory

[24] 517 N.E.2d at 1308, citations omitted

connection, for his personal profit or other benefit, with the injury-producing product…which calls for the imposition of strict liability”[25].

Under the authorities cited above, it is clear that SAP bears responsibility for its defective CAC design. SAP reverse engineered its CAC design from Rolls-Royce’s CAC. It did so for the express purpose of installing the SAP designed CAC in a Rolls-Royce 250-C20 helicopter engine. It sold that design to Extex for profit, thus perpetuating its design in the stream of commerce. SAP’s defective design caused the CAC to fail, leading directly to the death of plaintiffs’ decedent and the other occupants of the helicopter. In such circumstances SAP as designer owed a duty to design a non-defective product. It owed that duty to the foreseeable victims of a defective design. Because a CAC failure results in total engine failure the foreseeable victims of SAP’s defective design are occupants of a helicopter with a Rolls-Royce 250-C20 engine. Plaintiffs’ decedent, of course, was exactly such a foreseeable victim.

SAP rests its entire case on the contention that it faces no liability for its design, no matter how dangerous or defective it may have been, on the sole ground that SAP sold the design to Extex. Thus, SAP offers no evidence whatsoever that the design was not defective. Because SAP faces liability as the designer for defects in its design, there remain substantial triable issues of material fact

[25] 24 Cal.App.3d at 725

regarding SAP's liability, thus precluding summary judgment. The Court should deny the motion.

**C. Breach of Warranty and Misrepresentation.**

Because this is a motion for summary judgment, not a motion for partial summary judgment, the Court must deny the motion in its entirety on the basis of SAP's liability for negligent design. Nevertheless, plaintiffs will briefly address the issues of Breach of Warranty and Misrepresentation.

As noted above, in order to receive a PMA for its CAC design the FAA required SAP to certify that its design is safe for installation on the certified products[26], in this case the Rolls-Royce 250-C20 engine. Thus, SAP warranted and represented to FAA that its CAC design was safe. In fact, of course, the design was defective and dangerous, resulting in the deaths of several people, including plaintiffs' decedent. Assuming that SAP's design was defective and dangerous (and SAP offers no evidence to rebut this conclusion), SAP necessarily breached its warranty of fitness of the design for the particular purpose and misrepresented its safety.

Accordingly, because SAP does not contest the position that its CAC design was defective and dangerous there remain substantial triable issues of material fact

[26] 14 C.F.R. section 21.303(k)

regarding SAP's liability for both breach of warranty and misrepresentation and the Court should deny the motion.

**CONCLUSION**

SAP rests its motion on two principal grounds- the statute of limitations and the contention that SAP is relieved of liability no matter how defective and dangerous its CAC design for the sole reason that it sold the design to Extex. The Court has already rejected the statute of limitations argument and should do so again. Plaintiffs filed their action in Hawaii State Court within the statutory period, including DOE allegations as permitted by HRCP Rule 17. They added SAP as a defendant after they learned of its involvement in the summer of 2005 and after they had conducted a reasonable investigation as require by FRCP 11 to confirm that they had a valid claim for relief against SAP. Thus, as the Court has already held, the action against SAP is timely. The Court should deny the motion.

SAP claims that it is shielded from all liability regardless of how faulty its design was simply because it sold that design to Extex. Both the law and the reported decisions hold otherwise. SAP directly profited from that sale and thus was a part of the stream of commerce that led to the fatal crash when the SAP-designed CAC failed. Thus, there are triable issues of material fact regarding SAP's role in plaintiffs' damages and the Court should deny the motion.

Because this is a motion for summary judgment and not for partial summary judgment the Court should deny the motion in its entirety. In any event, as far as breach of warranty and misrepresentation are concerned, SAP warranted and represented to FAA that its CAC design was safe for its intended use in a Rolls-Royce 250-C20 engine. SAP fails to offer any evidence that it did not breach the warranty or that its representation was true. In fact, the evidence before the Court is that SAP breached the warranty and that its representation of its CAC's safety was false. At a minimum this creates triable issues of material fact, requiring that the motion be denied.

DATED: Honolulu, Hawaii, August 17, 2006

/s/ MARK S. DAVIS
MARK S. DAVIS, Esq.
MICHAEL K. LIVINGSTON
TERRY O'REILLY, ESQ.
STEPHEN J. PURTILL, ESQ.
O'REILLY & DANKO
Attorneys for Plaintiffs